IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LONNIE WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-10-287-RAW-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

The claimant Lonnie Walker requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As set forth below, the undersigned Magistrate Judge hereby RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on July 22, 1960, and was forty-nine years old at the time of the administrative hearing. He has an eleventh grade education (Tr. 27) and worked as a bricklayer for approximately 13 years (Tr. 142). The claimant alleges that he has been unable to work since August 15, 2007, because of joint pain in his ankle, knee, lower back, elbow, and wrist, high blood pressure, poor eyesight, and asthma (Tr. 141).

### Procedural History

On July 15, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Richard J. Kallsnick conducted a hearing and determined that the claimant was not disabled in a decision dated March 26, 2010. The Appeals Council denied review, so the ALJ's decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (hypertension, obesity and mild osteoarthritis) but

retained the residual functional capacity ("RFC") to perform medium work, *i. e.*, he could lift/carry 25 pounds frequently and 50 pounds occasionally, and stand/walk/sit for 6 of 8 hours in a work day (Tr. 6, 7). The ALJ also found the claimant could use his hands and feet to operate controls, that he had no postural, visual or environmental limitations, and that his mild to moderate pain would not interfere with his ability to work (Tr. 7). The ALJ concluded that while the claimant could not return to his past relevant work as a bricklayer, he was nevertheless not disabled because there was work he could perform in the national economy, *i.e.*, hand packer, auto detailer, assembly worker, sorter, and inspector (Tr. 11).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider all the medical evidence and the combined effects of his impairments, specifically his obesity; (ii) by failing to properly analyze his credibility; (iii) by failing to properly determine his RFC; and (iv) by failing to fully develop the record. The undersigned Magistrate Judge finds the claimant's first contention persuasive.

The claimant was referred to state physician Jimmie W. Taylor, M.D. for a consultative examination on September 4, 2008 (Tr. 190-95). During that examination, Dr. Taylor noted that claimant reported chronic joint pain, but both his grip and dexterity were normal, though Dr. Taylor wrote that claimant has "trouble with buttons and tying [his] shoes" (Tr. 190). Claimant was noted, however, to have a "painful range of motion" and "shooting pain from [the] lower back" (Tr. 190). Dr. Taylor also evaluated

claimant's range of motion in all joints, and those findings indicated that claimant had no decreased range of motion in *any* joint (Tr. 192-93). Dr. Taylor did note, however, that claimant reported pain and tenderness in his lumbosacral spine, pain in his cervical spine during extension and left and right rotation, and weak toe walking, but his range of motion in both his lumbosacral and cervical spine was normal (Tr. 194).

On September 9, 2008, reviewing physician Thurma Fiegel, M.D. requested an explanation from Dr. Taylor regarding her notations regarding claimant's "trouble with buttons and tying shoes" and "chest pain . . . with just a small amount of exertion" (Tr. 197). Dr. Taylor responded that claimant's trouble with buttons and tying his shoes were due to his large fingers and thumbs and that his chest pain reportedly occurred during exertion and, at times, for "no obvious reason" (Tr. 199).

The claimant was also sent for x-rays on his hands and wrists by the agency in October 2008, the results of which were interpreted by Dr. John Rice, D.O. and indicated that: 1) claimant's right wrist was "essentially unremarkable"; 2) claimant's right hand indicated "periarticular osteoporotic change . . . consistent with mild osteoarthritis"; 3) claimant's left wrist showed "mild osteoarthritic change . . . at the distal radius"; and 4) claimant's left hand showed mild to moderate arthritic change . . . at the first metacarpophalangeal joint of the thumb" resulting in an overall impression of "mild osteoporotic change of the left hand in three views." (Tr. 202).

Reviewing examiner Dr. Thurma Fiegel completed an assessment of claimant's functional limitations on October 27, 2008 (after the x-ray interpretations had been

included in the file) and found that claimant was capable of occasionally lifting/carrying 50 pounds, frequently lifting/carrying 25 pounds, standing/walking for 6 hours in an 8-hour workday, and sitting for 6 hours in an 8-hour workday (Tr. 207). Dr. Fiegel found the claimant's ability to push, pull, and operate hand and foot controls to be unlimited, and noted that while claimant reportedly has trouble using his hands, there was no abnormality in the medical evidence to explain such a limitation (Tr. 207). Further, Dr. Fiegel found that claimant had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 208-10).

The claimant was represented by an attorney at the March 11, 2010 hearing, who opened the hearing by bringing up that claimant "has not seen a doctor in quite some time" because "[h]e has no funds with which to do that" (Tr. 23). The attorney also stated that because of the suspected nerve problem in claimant's ulnar nerve it would be prudent for the agency to supplement the record with additional testing (Tr. 23-24, 45). The claimant testified that his left hand is worse than his right, which, coincidentally, was the hand that he used to lay bricks when he worked as a bricklayer (Tr. 26). He stated that his arm, wrist, and ring finger/pinky finger in his hands go numb which prevents him from being able to grip thing without dropping them (Tr. 27). The claimant testified that while he had not seen a doctor for the specific problems he had experienced with his hands, he had mentioned it while visiting with Dr. Charles Stennett in Siloam Springs, Arkansas who told him that it was "probably carpal tunnel and [claimant] need[ed] to learn to live with it, that there's nothing that can be done for it" (Tr. 31). Because Dr.

Stennett is retired, the claimant's attorney (unbeknownst to the claimant) was unable to produce related medical records (Tr. 30-31).  The claimant also testified that he had constant pain in his lower back and intermittent pain in his upper back, that his legs and hips hurt and sometimes go numb, and that his feet frequently go to sleep (Tr. 33-34).

Obesity is a medically determinable impairment often associated with disturbance of the musculoskeletal system, which can be a major cause of disability.  The Listing of Impairments references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately."  The ALJ must therefore "consider any additional and cumulative effects of obesity" when assessing an individual's residual functional capacity.  20 C.F.R. pt. 404, subpt. P, app. 1, Part A, 1.00 Musculoskeletal System.

In this case, the ALJ found that the claimant's obesity was a severe impairment at step two but that it did not meet a Listing at step three (Tr. 6-7).  But at step four, the ALJ made only the following conclusory reference to obesity: "In view of his hypertension, obesity and mild osteoarthritis, he would undoubtedly have some difficulties. Given the objective medical evidence in the record, the undersigned finds that the claimant's residual functional capacity is reasonable[.]" (Tr. 10).  The ALJ did not, for example, discuss how the claimant's obesity specifically affected his other severe impairments, *see Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (discussing the requirements of Soc. Sec. Rul. 02-01 and noting that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments."), or explain what limitations he

included in the claimant's RFC (if any) attributable to obesity.  At a minimum, ALJ should have explained how obesity (a severe impairment at step two) became so insignificant at step four that no additional limitations were required.  *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding "the ALJ should have explained how a 'severe' impairment at step two became 'insignificant' at step five.").  *See also Hamby*, 260 Fed. Appx. at 112 ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").

Because the ALJ failed to properly analyze the impact of the claimant's obesity on his other severe impairments, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in adjustments to his RFC, the ALJ should re-determine what the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.  The undersigned Magistrate Judge accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith.  Any objections to

this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 14th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma